UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARDRA YOUNG,

        Plaintiffs,

v.

ROSILYN JINDAL, *et al.*,

        Defendants.

_____/

Case No. 2:21-cv-12170
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT MDOC DEFENDANTS KORTE & GILBERT'S MOTION TO DISMISS (ECF No. 66)

**I.    RECOMMENDATION**: The Court should **GRANT** MDOC Defendants Korte & Gilbert's motion to dismiss (ECF No. 66).

**II.    REPORT**:

    **A.    Background**

Plaintiff Ardra Young is currently in the custody of the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). (ECF No. 56.) Although the operative pleading does not comply with Fed. R. Civ. P. 10(a)'s requirement that the title "name all the parties[,]" (*see* ECF No. 57, PageID.543), it seems there are five named Defendants – Corizon Defendant Rosilyn Jindal, P.A., and MDOC Defendants Kimberly Korte, Michelle

Gilbert, Andrea Bobon, and Cheryl Elliot.  (*Id*., ¶ 7(c)-(g).)  (*See also* ECF Nos. 25, PageID.185; ECF No. 31.)

B.     **The Pending Motion Concerns Two of the MDOC Defendants.**

Judge Drain has referred this case to me for all pretrial matters.  (ECF No. 18.)   Currently before the Court is MDOC Defendants Gilbert and Korte's January 13, 2023 motion to dismiss or, alternatively, for summary judgment based on exhaustion (ECF No. 66), as to which a response (ECF Nos. 69), and a reply (ECF No. 72) have been filed.[1]

C.     **Discussion**

1.     **Plaintiff's claims against Korte & Gilbert concern medically necessary auxiliary aids and replacement hearing aid batteries.**

Plaintiff describes Kimberly Korte as the Health Unit Manager (HUM) at the MDOC's Gus Harrison Correctional Facility (ARF) and Michelle Gilbert as a Registered Nurse (RN) at ARF.  (*Id*., ¶¶ 7d, 7e.)[2]  By way of background, in March

---

[1] On March 10, 2023, Plaintiff filed a letter (ECF No. 78), which was docketed as an addendum to his February 8, 2023 response (ECF No. 69) and intended to bring a case to the Court's attention.  *See Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80 (6th Cir. Oct. 26, 1995) ("whether there is enough evidence in the record that would allow a reasonable jury to conclude that Warden Foltz failed to take reasonable steps to ensure that vulnerable inmates like plaintiff would not be transferred to a facility where a substantial risk of serious harm existed.").  *Taylor* was decided several years prior to Plaintiff's response; therefore, if Plaintiff intended to rely upon *Taylor*, he should have cited it in his response.

2

2018, in an unrelated case, this Court ordered the MDOC to "[p]rovide necessary auxiliary aids for all deaf and hard of hearing prisoners to participate equally in prison programs and services, including consistent access to ASL interpreters for all 'high-stakes' interactions and programs, . . . including religious services[.]" *McBride v. Michigan Dep't of Corr.*, 294 F. Supp. 3d 695, 700 (E.D. Mich. 2018) (Cox, J.). (ECF No. 57, ¶ 7h.)

The instant lawsuit concerns, in part, Plaintiff's alleged efforts to secure replacement hearing aid batteries in April 2020 (ECF No. 57, ¶¶ 7nn-pp), June 2020 (*id.*, ¶ 7qq-rr, ww), August 2020 (*id.*, ¶¶ 7kkk-mmm), October 2021 (*id.*, ¶¶ 7nnn-ooo), and November 2021 (*id.*, ¶¶ 7ppp-qqq, yyy, cccc). As to Korte and Gilbert, Plaintiff sets forth Eighth Amendment claims. (*See* ECF No. 57, ¶¶ 30-39 [Count III]; *id.*, ¶¶ 40-47 [Count IV]). Within each of these counts, Plaintiff generally alleges that "[a] prison medical provider who interrupts or delays a prisoner's prescribed course of treatment for his significant hearing loss has acted deliberately indifferent toward that prisoner's serious medical condition[.]" (*Id.*, ¶¶ 33, 41.) Plaintiff then makes the following allegations, specifically mentioning Korte and Gilbert's names:

---

[2] Plaintiff also describes Gilbert as an ARF Mailroom Supervisor (ECF No. 57, ¶ 7g); however, it appears Plaintiff intended to refer to Defendant Elliot (*see, e.g., id.*, 552, 564-566).

3

- At all times relevant to the herein-alleged events, Defendant Korte, as the HUM at ARF, was primarily and directly responsible for the day-to-day operations of the ARF Clinic;

- At all times relevant to the herein-alleged events, Defendant Gilbert, as RN 13 at ARF, was responsible for ensuring that ARF prisoners receive nursing care services that are within the legal scope of nursing practice as developed by the profession, the Nurse Practice Act, and the governing regulatory agencies;

- At all times relevant to the herein-alleged events, Defendant Korte, as the HUM at ARF, [and Defendant Gilbert, as RN 13 at ARF,] had an affirmative duty to ensure that the Clinic was in full operational compliance with the express terms of the Settlement Agreement in *McBride* . . . with respect to the matter of medically necessary auxiliary aids being provided to hard of hearing prisoners in a timely manner;

- Defendant Korte [and Defendant Gilbert] w[ere] fully aware of the fact that Plaintiff suffers from significant hearing loss and that his condition would place him at risk of serious harm and substantially interfere with his ability to function in the penal environment in which he is confined;

- Defendant Korte [and Defendant Gilbert] abandoned [their] affirmative duty to establish an effective procedure that would ensure that the ARF Clinic was in full operational compliance with the express terms of the Settlement Agreement in *McBride* . . . with respect to the matter of providing medically necessary auxiliary aids to hard of hearing prisoners in a timely manner;

- Defendant Korte [and Defendant Gilbert] implicitly approved of and knowingly acquiesced in the conduct of . . . subordinate RNs/LPs with respect to their repeated failures to provide Plaintiff with replacement batteries for his hearing aid devices in a timely manner;

4

- Accordingly, Plaintiff hereby asserts a claim against Defendant Kimberly Korte [and Defendant Gilbert] under the Eighth Amendment to the U.S. Constitution[.]

(*Id*., ¶¶ 34-39, 42-47.)  Plaintiff seeks compensatory and punitive damages against these Defendants.  (*Id*., PageID.565-566 ¶¶ e, f, m, n.)

### 2. Failure to state a claim

#### a. Fed. R. Civ. P. 12(b)(6)

Citing Federal Rule of Civil Procedure 12(b)(6), Defendants Korte and Gilbert argue that Plaintiff "fails to state a claim against [them]."  (ECF No. 66, PageID.638, 640-644.)  When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., *adopting report and recommendation of* Binder, M.J.).[3]

### b. Personal involvement

Korte and Gilbert argue that Plaintiff "fails to state how [they] were personally involved in any unconstitutional conduct," and "does not make any

---

[3] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

specific allegations" as to how they "'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (*quoting Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). (ECF No. 66, PageID.642-643.)  As Korte and Gilbert correctly observe, the operative pleading "did not allege any specific incidents involving HUM Korte or NS Gilbert, did not allege that they individually provided him medical care, and did not allege that they directly participated in any unconstitutional conduct." (*Id.*, PageID.643.)

Plaintiff's response does not convince the Court otherwise. He contends the operative pleading "sets forth sufficient facts to state a claim that is plausible on its face." (ECF No. 69, PageID.797.)  In particular, he points to the amended complaint's introductory statement that "[t]he Defendants . . . delayed and interrupted prescribed courses of medical treatment," (ECF No. 57, ¶ 5), as well as the above-quoted portions of Counts II and III (*id.*, ¶¶ 33, 35-37, 41, 43-45). (ECF No. 69, PageID.798.)  He explains that the "affirmative duty" he accuses Korte and Gilbert of abandoning (*see* ECF No. 57, ¶¶ 35, 37, 43, 45) is derived from their "affirmative duty to protect the persons under their supervision against known risks of serious harm without regard for whether the risk is one that is unique to prison." *Rhodes v. Michigan*, 10 F.4th 665, 677 (6th Cir. 2021). (ECF No. 69, PageID.799.)  Undoubtedly responding to Korte and Gilbert's statements about

7

supervisory liability – *i.e.*, that "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998)) – and their involvement in the grievance process (*see* ECF No. 66, PageID.643), Plaintiff insists his claims against Defendants Korte and Gilbert are not based on *respondeat superior* or their participation in the grievance process. (ECF No. 69, PageID.799.) Instead, Plaintiff contends the operative pleading "myopically focuses on what Defendants Korte and Gilbert personally did . . . ." (*Id.* (emphasis in original).) More specifically, Plaintiff contends they "personally had a job to do," "did not do it[,]" "abandon[ed] the specific duties of [their] position[s] . . . in the face of actual knowledge of a breakdown in the proper workings of the [ARF Health Care Clinic][,]" and "[their] failure to do [their] job[s] resulted directly in a violation of the plaintiff's Eighth Amendment right[,]" *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). (ECF No. 69, PageID.799-800.) However, as this Court recently explained in response to a plaintiff's reliance on *Hill*, "a much more recent case . . . rejects [the] position" that "supervisor liability can be based on the failure to act when the supervisor abandons specific duties of his position and his failure to do his job results in the plaintiff's constitutional violations." *Miller v. Gettel*, 575 F. Supp.3d 846, 864 (E.D. Mich. 2021) (Drain, J.) (referencing

8

*Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). And, in affirming this Court on that point, the Sixth Circuit, favorably citing *Gregory* and other more recent precedents, clarified that:

> "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). "[A] mere failure to act will not suffice[.]" *Id.* Rather, the "failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 242 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). This means, "[a]t a minimum," Miller must plausibly allege that "the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d at 300.
>
> Miller continues to rely on *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995), and *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992). But, as this court subsequently explained, neither decision holds that a knowing abdication of supervisory responsibilities is enough to establish liability for a subordinate's unconstitutional acts. *See Gregory*, 444 F.3d at 751-52. The district court observed as much, and concluded that Miller's claims against Gettel and Fondren for failure to train and supervise were based on an alleged failure to act. Miller does not plausibly allege that Gettel or Fondren implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct by the Intoximeters' technician who left the subject device in use after it failed to pass inspection on February 15, 2019.

*Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at \*8–9 (6th Cir. Apr. 14, 2023).

This line of reasoning stems from what *Gregory* had previously made clear:

> "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999) (citing *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in

9

unconstitutional behavior. *Id.* Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence. *Id. Gregory*, 444 F.3d at 751. In the instant matter, Plaintiff's non-specific allegations against Korte and Gilbert allege, at most, a negligent failure to act. As such, the Eighth Amendment deliberate indifference claims against these particular defendants should be dismissed.

In their reply, Korte and Gilbert make three convincing points that apply the law to the facts of this case, as alleged. First, and importantly with respect to the subjective prong of an Eighth Amendment deliberate indifference claim, Defendants Korte and Gilbert rightfully contend that Plaintiff "does not allege that any individual *intentionally* denied him batteries on these occasions[.]" (ECF No. 72, PageID.832-833 (emphasis added).) *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."") (*quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Instead, as Defendants point out, Plaintiff alleges the batteries were either inaccessible or not available. (ECF No. 72, PageID.833 (citing ECF No. 57, ¶¶ 7lll-qqq).) *See, e.g., Washington v. Randall-Owens*, No. CIV. 06-12588, 2007 WL 2713749, at *10 (E.D. Mich. Sept. 17, 2007) (Borman, J., *accepting report and recommendation of* Pepe, M.J.) ("there can be no showing of the requisite culpable state of mind for a deliberate indifference claim" where

"Plaintiff does not assert that Defendant Somers had any knowledge of the contents of these footlockers or their relation to Plaintiff's health care needs.").

Second, Korte and Gilbert contend that Plaintiff "does not allege that he notified HUM Korte or Nurse/Nursing Supervisor (NS) Gilbert during any of the occasions where he did not receive his hearing aid batteries," "nor does he explain how HUM Korte or NS Gilbert were 'fully aware' of his condition[,]" (*see* ECF No. 57, ¶¶ 36, 44), "or were personally involved in the decision to deny him batteries." (ECF No. 72, PageID.833.)  *See also Coates v. Jurado*, No. 12-15529, 2013 WL 5372808, at *6 (E.D. Mich. Sept. 25, 2013) ("Plaintiff has not presented evidence that Aiken, who reviewed Plaintiff's grievance, had actual knowledge of Jurado's alleged misconduct in denying Plaintiff an audiogram and hearing aid . . . [or] any evidence or argument showing that Aiken knew or believed that Plaintiff was not receiving adequate medical treatment.").  While it is certainly true that, "[a]t a minimum a plaintiff must show [or, in this case allege,] that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers[,]" *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982), the paragraphs which allege that Korte and Gilbert "abandoned [their] affirmative duty to establish an effective procedure that would ensure that the ARF Clinic was in full operational compliance with the express terms of the Settlement Agreement in McBride . . . with respect to the

11

matter of providing medically-necessary auxiliary aids to hard of hearing prisoners in a timely manner[,]" and "implicitly approved of and knowingly acquiesced in the conduct of . . . subordinate RNs/LPs with respect to their repeated failures to provide Plaintiff with replacement batteries for his hearing aid devices in a timely manner[,]" (ECF No. 57, ¶¶ 37-38, 45-46), are speculative and/or conclusory in nature. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"); *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (the Court "need not accept as true any 'conclusory legal allegations that do not include specific facts necessary to establish the cause of action.' ") (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)).

Finally, albeit without much detail, HUM Korte and NS Gilbert contend a comparison of the allegations against them with those against Corizon Defendant Rosilyn Jindal, P.A., "further underscores Young's failure to state a claim against" them. (ECF No. 72, PageID.834.) Preliminarily, the Court acknowledges that the alleged facts as to Jindal, which concern treatment for his ears, are distinct from those concerning Plaintiff's alleged efforts to secure replacement hearing aid batteries in April 2020 (ECF No. 57, ¶¶ 7nn-pp), June 2020 (*id.*, ¶ 7qq-rr, ww), August 2020 (*id.*, ¶¶ 7kkk-mmm), October 2021 (*id.*, ¶¶ 7nnn-ooo [14 days]), and November 2021 (*id.*, ¶¶ 7ppp-qqq, yyy, cccc [21 days]). Thus, the Court presumes

12

that Korte and Gilbert are referring to the fact that Jindal is referenced on multiple occasions within the "statement of facts" (ECF No. 57, ¶¶ 7c, o-p, v-y, dd, ff-jj, ss, vv, xx-aaa, ddd), as well as within Count I (Free Exercise) (*id.*, ¶¶ 8, 11-16), and Count II (Eighth Amendment) (*id.*, ¶¶ 21, 24, 27, 28, 29), whereas, Korte and Gilbert, other than being identified as parties and by title (*see id.*, ¶¶ 7d, e) and listed within the prayer for relief (*see id.*, PageID.565-566 ¶¶ e, f, m, n), are only mentioned within Counts III and IV (¶¶ 34-39, 42-47). Certainly, comparing the alleged facts mentioning Jindal (of which there are many) to the alleged facts concerning hearing aid batteries (which do not mention Korte or Gilbert), and taking into consideration the conclusory nature of the causes of action that name Korte and Gilbert, reveals a dearth of detail as to Korte's and/or Gilbert's personally involved in the denial of hearing aid replacement batteries. *Johnson v. Washington*, No. 20-11280, 2021 WL 1582421, at *9 (E.D. Mich. Mar. 25, 2021) (Grand, M.J.) ("Unlike his vague and conclusory allegations against [HUM] Crisenbery, these types of allegations supply factual content that speaks to the type of conduct a deliberate indifference claim is designed to address; they show not just the actors' mere knowledge of Johnson's complaints, but rather, their direct personal involvement in the conscious and reckless (and arguably malicious) disregard of a known risk to his serious medical needs."), *report and*

13

*recommendation adopted*, No. 20-CV-11280, 2021 WL 1575295 (E.D. Mich. Apr. 22, 2021) (Goldsmith, J.).

In sum, the Court agrees that "Young fails to state how HUM Korte and NS Gilbert were personally involved in any unconstitutional conduct[.]" (ECF No. 66, PageID.643-644.)

### D. Conclusion

For the reasons stated above, the Court should **GRANT** MDOC Defendants Korte & Gilbert's motion to dismiss (ECF No. 66). If the Court agrees with this recommendation, then it need not consider Korte & Gilbert's alternative, exhaustion argument.

### III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

14

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 21, 2023

                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE