UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARDRA YOUNG,

        Plaintiff,

v.

ROSILYN JINDAL, *et al.*,

        Defendants.

_____/

Case No. 2:21-cv-12170
District Judge Gershwin Drain
Magistrate Judge Anthony P. Patti

**<u>ORDER (1) DENYING MOTION TO MODIFY THE SCHEDULING ORDER (ECF NO. 91); (2) DENYING MOTION FOR THE RECRUITMENT OF COUNSEL (ECF NO. 92); AND, (3) DENYING AMENDED MOTION FOR SANCTIONS FOR NONCOMPLIANCE WITH SUBPOENA (ECF NO. 101)</u>**

**A. Background**

Plaintiff Ardra Young is currently in the custody of the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). (ECF No. 56.) Although the operative pleading does not comply with Fed. R. Civ. P. 10(a)'s requirement that the title "name all the parties[,]" (see ECF No. 57, PageID.543), Plaintiff appears to bring the action against five named Defendants – Corizon Defendant Rosilyn Jindal, P.A., and MDOC Defendants Kimberly Korte, Michelle Gilbert, Andrea Bobon, and Cheryl Elliot. (*Id.*, ¶ 7(c)-(g).) (*See also* ECF Nos. 25, PageID.185; ECF No. 31.)  On March 18, 2022, Judge Gershwin Drain referred this case to me "for all pretrial proceedings, including a

hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 18, PageID.92.)

On August 21, 2023, I issued a report and recommendation to grant Defendants Gilbert and Korte's motion to dismiss. (ECF No. 81.) Judge Drain adopted the recommendation, dismissed Defendants Gilbert and Korte, and then denied subsequent motions for reconsideration. (ECF Nos. 88, 108, 111.) In the meantime, Plaintiff filed a variety of motions, three of which remain pending before the Court: (1) Motion to Modify the Scheduling Order (ECF No. 91); (2) Motion for the Recruitment of Counsel (ECF No. 92); and, (3) Amended Motion for Sanctions for Noncompliance with Subpoena (ECF No. 101). I will address each motion in turn.

**B. Discussion**

**1. Motion to Modify the Scheduling Order (ECF No. 91)**

The initial scheduling order in this case set two dispositive motion deadlines: (1) May 27, 2022 for dispositive motions averring a failure to exhaust administrative remedies, raising the defense of qualified immunity, or for dismissal under Rule 12; and, (2) February 28, 2023 for all other motions for summary judgment, if any. (ECF No. 19.) The first of these deadlines, which, by its terms could only apply to Defendants, has been extended on two occasions:

2

1. On May 27, 2022, the MDOC Defendants filed a motion to stay the scheduling order (ECF No. 34), as to which Plaintiff filed a partial concurrence (ECF No. 37). On August 30, 2022, so as to allow them to test the newly amended pleadings by which they were added, I entered an order granting Defendants' motion and staying discovery and other deadlines "with respect to the [four MDOC] Defendants [Korte, Gilbert, Bobon and Elliot] added as a result of Plaintiff's filing of the amended complaint" (ECF No. 23) only, "but not as to Jindal" or, for that matter, as to Plaintiff. (ECF No. 46, PageID.400.) On October 6, 2022, I entered an order allowing the presumed "newly added Defendants Korte, Gilbert, Bobon, and Elliot" to "have until Wednesday, November 30, 2022 to file any dispositive motions averring: a failure to exhaust administrative remedies, raising the defense of qualified immunity, or for dismissal under Rule 12[,]" but also providing that, "[a]s to Defendant Jindal, the scheduling order dates at ECF No. 19 remain in effect." (ECF No. 51.) Plaintiff filed his amended, and now operative, complaint on December 5, 2022. (ECF No. 57.)

2. On December 27, 2022, the MDOC Defendants filed a motion, which effectively requested that the Court set a deadline of January 13, 2023 for the MDOC Defendants' dispositive motion raising failure to exhaust administrative remedies, qualified immunity, or Rule 12 dismissal. (ECF No. 60, PageID.582.) The Court granted this motion by way of a same-day text-only order. (ECF No. 61.)

Following Corizon Health Inc.'s February 2023 suggestion of bankruptcy and notice of automatic stay (ECF No. 71), I granted Defendant Jindal's emergency motion to stay proceedings 90 days (ECF No. 73), essentially staying the case from February 27, 2023 to Sunday, May 28, 2023 (although more accurately until Tuesday, May 30, 2023, given the weekend deadline and the Memorial Day holiday). (ECF No. 75.)

3

The remaining MDOC Defendants are operating under a different timeline, as the Court initially stayed the case against all MDOC Defendants, and then lifted the stay to allow motions related to exhaustion. (ECF Nos. 46, 51.)

The February 28, 2023 deadline for "all other motions" (*i.e.*, besides "dispositive motions averring a failure to exhaust administrative remedies, raising the defense of qualified immunity, or for dismissal under Rule 12") – has never been extended as to Plaintiff or Defendant Jindal. In effect, the 90 day pause in the proceedings pushed the February 28th deadline, *i.e.*, one day after the stay was entered, to one day after the stay expired by its own terms, *i.e.*, May 31, 2023. (ECF No. 86, PageID.85-86.)

On August 25, 2023, Plaintiff brought a motion for partial summary judgment against Defendant Jindal. (ECF No. 82), which I struck as being, "at best, approximately three months tardy (and nearly six months beyond the February 28, 2023 deadline)." (ECF No. 86, PageID.991.) I specifically held "Since Jindal remains bound by the expired dispositive motion deadline and is now prohibited from filing a summary judgment motion against Plaintiff, it is only fair that Plaintiff must likewise be so bound and prohibited from filing such a motion against Jindal." (*Id.*)

Plaintiff seeks to revisit this ruling by moving to modify the scheduling order (ECF No. 91) "for the purpose of permitting him (and not Defendant Rosilyn Jindal) to file an amended Motion for Summary Judgment)." (ECF No. 91, PageID.1010.) Plaintiff bases this request on allegations that Defendant Jindal was not cooperative during discovery, and underwent a deliberate strategy of delay to frustrate the procedural progress of this case.

The rules of civil procedure afford district courts broad authority and discretion to manage the discovery process in cases and control their dockets. *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014). Rule 16(b)(4) provides that a discovery schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal citation omitted). Generally, "[i]f [a] party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Another "relevant consideration" is possible prejudice to the non-moving party. *Inge*, 281 F.3d at 625. However, a showing of prejudice is not required to be made where the moving party has failed to demonstrate its own diligence. *See Johnson v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 502 F. App'x 523, 541 (6th Cir. 2012) (upholding denial of an amendment without

5

a finding of prejudice); *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (holding that prejudice is "merely a consideration" in the good cause analysis). When seeking an extension of time after a deadline has already passed, the moving party must also show "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

Plaintiff has fallen far short in demonstrating "good cause" to justify extending the Court's scheduling order, let alone "excusable neglect." The Court's scheduling order provided a discovery deadline of December 15, 2022, and the same deadline to file motions related to discovery. (ECF No. 19.) This was ample time for discovery to be completed and, even more noteworthy, Plaintiff did not timely move within that timeframe to compel any discovery from Defendant Jindal. Instead, Plaintiff waited eight months and then filed an untimely motion for summary judgment. (ECF No. 82.) As Defendant Jindal points out, it was only after the summary judgment motion was stricken as untimely that Plaintiff sought to extend the deadline. Defendant elaborates:

> Discovery is closed and the summary judgment deadline is long past. Plaintiff's arguments regarding discovery issues related to a subpoena to DTMB and Defendant Jindal's "promise" to file dispositive motion with medical records are unavailing. Defendant Jindal has timely and fully responded to discovery requests and is under no obligation to file a motion for summary judgment. If Plaintiff needed his medical records, he had the same power as Defendant Jindal. Further, none of these discovery issues seemingly prevented Plaintiff from filing a dispositive motion in August

6

2023; it is only now that he is prevented from doing so that he raises these issues.

(ECF No. 98, PageID.1095.)  The Court agrees, and Plaintiff's motion to modify the scheduling order (ECF No. 21) is **DENIED**.

**2. Motion for the Recruitment of Counsel (ECF No. 92)**

The Court next proceeds to Plaintiff's "Motion for the Recruitment of Counsel."  (ECF No. 92.)  As a preliminary matter, the Court does not have the authority to appoint a private attorney for Plaintiff in this civil matter.  Even if the circumstances of Plaintiff's case convinced the Court to engage in a search to find *pro bono* counsel, "[t]here is no right to recruitment of counsel in federal civil litigation, but a district court has discretion to recruit counsel under 28 U.S.C. § 1915(e)(1)."  *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014) (emphasis added); *see also Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) ("Congress hasn't provided lawyers for indigent prisoners; instead it gave district courts discretion to ask lawyers to volunteer their services in some cases.").  The appointment of counsel in a civil case, therefore, "is a privilege and not a right." *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) (internal quotation and citation omitted).

The Supreme Court has held that there is a presumption that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived

7

of his physical liberty." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26-27 (1981). With respect to prisoner civil rights cases in particular, the Court of Appeals for the Sixth Circuit has held that "there is no right to counsel. . . . The appointment of counsel in a civil proceeding is justified only by exceptional circumstances." *Bennett v. Smith,* 110 F. App'x 633, 635 (6th Cir. 2004) (internal and external citations omitted). Accordingly, although the Court has the statutory authority to request counsel for *pro se* plaintiffs in civil cases under 28 U.S.C. § 1915(e)(1), the exercise of this authority is limited to exceptional situations.

In evaluating a matter for "exceptional circumstances," a court should consider: (1) the probable merit of the claims, (2) the nature of the case, (3) the complexity of the legal and factual issues raised, and (4) the ability of the litigant to represent him or herself. *Lince v. Youngert*, 136 F. App'x 779, 782 (6th Cir. 2005); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993); *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985). The Court has considered these factors here and denies the motion.

Plaintiff seeks recruitment of counsel "for the limited purpose of obtaining discovery," arguing that Defendants have given him the "runaround" in attempting to obtain discovery. (ECF No. 92, PageiD.1035) But I cannot find that this argument alone sets forth "exceptional circumstances" that justify a request for appointment of counsel.

8

Plaintiff does not specifically aver that he is indigent. Although Plaintiff requests counsel under 28 U.S.C. § 1915(e) and although he is a prisoner, he is not proceeding *in forma pauperis*. Even if he did allege that he could not afford counsel, there is no right to counsel in civil cases filed by indigent *pro se* prisoners. *Bennett*, 110 F.App'x at 635 (citing *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996)). Many people are unable to afford counsel, although some are able to gain the interest of a contingent fee lawyer or even an attorney who is willing to go forward in the hope that attorney's fees will later be rewarded. In any case, and unfortunately, indigency is widespread among the prison population and is certainly not an "exceptional circumstance. Thus far, Plaintiff has appeared able to file motions, make rational arguments, and even achieve some success on his motions. (*See* ECF Nos. 51, 53, 84.) Even if Plaintiff is arguing that his incarceration makes discovery more difficult to obtain, the discovery rules make no distinction between what is available to someone who is in jail or prison or someone who is at complete liberty; nor do they substantively distinguish between represented and *in pro per* parties. Moreover, difficulties in conducting discovery exist in most prisoner or detainee civil rights cases and do not constitute exceptional circumstances justifying appointment of counsel. *Whorton v. Deangelo*, No. 21-11046, 2022 U.S. Dist. LEXIS 110548, at *4 (E.D. Mich. June 22, 2022) (citing *Lafountain v. Martin*, 2009 U.S. Dist. LEXIS 92369, 2009 WL

3255099, at *1 (W.D. Mich. Oct. 5, 2009)). And, unfortunately, such difficulties often exist in general civil litigation where all parties are fully represented, indeed, all too often in this Court's view.

Finally, at this stage in the litigation, it is too early for the Court to judge the merits of the claim. Due to the limited number of *pro bono* counsel who are willing and available and the large number of prisoners who would like the help of volunteer attorney services, the Court generally waits to seek *pro bono* counsel until the case survives dispositive motion practice. Thus, absent exceptional circumstances, seeking *pro bono* counsel at this stage of litigation would be premature. Plaintiff's "Motion for the Recruitment of Counsel" (ECF No. 92) is thus **DENIED.**

### 3. Amended Motion for Sanctions for Noncompliance with Subpoena (ECF No. 101)

Plaintiff also moves for sanctions against Non-Party the Michigan Department of Technology Management and Budget ("DTMB") related to Plaintiff's March 29, 2022 subpoena to DTMB. Plaintiff first moved against DTMB in 2022 and, after some procedural hiccups, the Court directed DTMB to fully comply with Plaintiff's subpoena. (*See* ECF No. 80, PageID.879-80.) Specifically, based on the papers before the Court, it appeared that DTMB had not searched for all the requested email addresses and date ranges when it ran the

requested email searches. (ECF No. 80, PageID.879-80). The Court based this on discrepancies between DTMB's response brief, which stated that it ran a search "with the date range of September 1, 2018 through December 31, 2021" (ECF No. 55, PageID.533), which would include only a portion of Plaintiff's requested searches. The Court directed:

> . . . DTMB **SHALL** comply with each of the four requests set forth in the March 29, 2022 subpoena to produce documents, paying particular attention to the emails referenced and the time periods specified (ECF No. 28-2, PageID.220-225), preferably by supplementing both: (1) its April 7, 2022 response (ECF No. 27, PageID.200-203); and, (2) the April 26, 2022 supporting affidavit (ECF No. 28-3).

(ECF No. 80, PageID. 880.)

Plaintiff claims that he did not timely receive the required supplemental response,[1] and thus he attempted to file a motion for sanctions with the Court on September 1, 2023. (ECF No. 101, PageID.1149.) On September 24, 2023, Plaintiff received DTMB's supplemental response along with a "preliminary response" to the motion for sanctions, in which DTMB advised Plaintiff that the motion for sanctions did not appear on the Court's docket. (*Id.*)

---

[1] DTMB has provided a certified mail receipt indicating that it timely sent the subpoena response to Plaintiff on August 23, 2023. According to Plaintiff, he did not receive the subpoena response in August, when DTMB originally sent it because the prison claimed he was a "no show" to picking up mail. (ECF No. 101, PageID.1149-50.) In any event, Plaintiff has now received the subpoena response.

11

Plaintiff remailed the motion for sanctions to the Court, which was docketed on October 12, 2023 (ECF No. 95), and DTMB responded (ECF 100). Plaintiff then filed an "amended motion for sanctions" (ECF No. 101) and the Court denied the initial motion as moot (ECF No. 102.) It is this amended motion that is now before the Court.

Plaintiff claims that DTMB has still not complied with his discovery requests and that DTMB is in violation of this Court's August 4, 2023 order. DTMB denies this. As explained in DTMB's supplemental discovery response, its original March 30, 2022 search parameters did in fact comply with Plaintiff's subpoena requests. The error came in DTMB's *response brief*, filed with the Court, in which DTMB "unintentionally omitted the applicable date range for the search of ReamS@michigan.gov; and only stated the date range applicable to the email account of JindalR@michigan.gov." (ECF No. 101, PageID.1159.) So, according to DTMB's supplemental discovery response, the exact searches requested by Plaintiff were performed and produced (after redaction) to Plaintiff. (*Id.* at 1159-60.) DTMB supports this assertion with a March 30, 2022 email detailing the exact searches performed and a Supplemental Affidavit of Saige Arend-Ritter, the DTMB Freedom of Information Act Coordinator and Litigation Coordinator. Both of these documents were attached to DTMB's supplemental discovery response (*See* ECF No. 101, PageID.1159-60) and further attached to

DTMB's initial response to Plaintiff's now-terminated original motion for sanctions.[2] (See ECF 100-2, PageID.1135-1143.)

Plaintiff claims there are several things wrong with DTMB's response.

First, Plaintiff points to DTMB's March 20, 2022 email, in which DTMB indicates in "Summary 3" that a search of Ream's email produced two items (ECF No.100-2, PageID.1139-1140), but according to Plaintiff those two documents have not been produced. (ECF No.101, PageID.1150.)

Second, Plaintiff points to "Summary 1" of the email, in which DTMB indicates that a search of Jindal's email produced 28 items (ECF No.100-2, PageID.1139), but DTMB had stated in its May 27, 2022 response to Plaintiff's motion to compel that DTMB had located 21 pages of records. (ECF No. 101, PageID.1150-51.) Plaintiff argues that 21 pages does not account for 28 emails.

Third, Plaintiff argues, again, that there were five emails which were sent to Ream during the relevant subpoena period which have not been included in the discovery response. (ECF No.101, PageID.1151.) Plaintiff knows of these emails because they were "inadvertently included . . . in the package of rejected grievances that [Ream] returned to him." (*Id.*) Plaintiff suggests this is evidence that there are additional Reams emails responsive to his subpoena that have not

---

[2] After Plaintiff filed his amended motion for sanctions, DTMB filed a response to the amended motion but did not attach any exhibits, instead referencing the exhibits attached to the initial response. (*See* ECF No. 106.)

been produced.  This issue was raised in Plaintiff's initial motion to compel, and Defendant had then explained that emails which may have existed in 2019 may no longer have been retrievable in 2022.  (*Id.*, citing ECF No. 55, PageID.534-35.)

Fourth, Plaintiff complains that there were over 100 (53 for Jindal, and 85 for Ream) "unindexed" email hits which appeared in DTMB's search, but which were not produced to him.  (ECF No.101, PageID.1153.)  Plaintiff argues he is entitled to the unindexed items.

Finally, Plaintiff claims that the March 30, 2022 email which DTMB relies upon to prove it complied with the subpoena is "a blatant forgery."  (ECF No.101, PageID.1151.)  Plaintiff argues that while the email was "purportedly sent from [DTMB] to attorney Eric M. Jamison at the Attorney General's office" on March 30, 2022 at 2:15, the body of the email refers to searches that took place on March 30, 2022 at 18:02, 18:03, and 18:04, which would have been *after* the email was sent.  (ECF No.101, PageID.1151-52.)

Plaintiff argues that the "chicanery" of DTMB has caused Plaintiff to waste time, money, and effort, and that the Court should hold DTMB in contempt and impose sanctions against it for having failed to comply with the subpoena requests or with this Court's August 4, 2023 order.  (ECF No. 101, PageID.1156.)

DTMB does not specifically respond to each of Plaintiff's arguments, but instead states generally that "DTMB has fully responded and complied with this

14

Court[']s order, dated August 4, 2023, and no further action is possible, or required of DTMB. " (ECF No.106, PageID.1196 (citing *United States v. Bryan*, 339 U.S. 323, 330 (1950).) DTMB elaborates:

> DTMB provided plaintiff with an email from DTMB's eDiscovery Support team to the Attorney General's Office. (ECF No. 100-2, PageID.1139-1140.) Here, this email shows all searches, as sought by plaintiff, were completed using each requested email address with applicable date ranges and search terms. Each search was then collected and reviewed. The resulting 21 pages of records were produced to plaintiff. (See Arend-Ritter Supplemental Affidavit, ECF No.100-2, PageID.1142-1143.)

(ECF No.106, PageID.1196.) Thus, according to DTMB, all records responsive to Plaintiff's discovery requests have been provided.

While counsel for DTMB could have been far more specific in its response brief, the Court is satisfied that DTMB has met its discovery obligations. As DTMB argues, "The issue before the Court is whether the subpoena was complied with, and it was. There is nothing else DTMB can do to comply with the subpoena. It ran the searches that were requested and produced the resulting information." (ECF No.106, PageID.1197.)

Fundamentally, DTMB has offered an adequate explanation for why the responses initially appeared incomplete, but were in fact complete: the error is attributable to Counsel's inartful drafting of the response brief in making it appear that only some of the dates were searched. As to Plaintiff's specific quibbles with

15

the discovery responses, the Court is not persuaded that any of the so-called irregularities establish forgeries, fraud, or any other malfeasance by DTMB.

With respect to the "unindexed" items, DTMB explains that "unindexed items are logos contained within signature blocks, blank files or other meaningless system files. They do not contain user generated information." (ECF No.106, PageID.1196, n1.) The Court finds this response satisfactory, and also finds satisfactory the explanation that emails which may have existed in 2019 could have been routinely purged or for some other reason were not captured in the search. Defendant has offered a sworn affidavit and a supporting email indicating that the required search was performed and the results were provided. There is not much more the Court can do.

As to the "missing" two pages that Plaintiff claims he did not receive, or the 21 pages instead of 28 emails, the Court is not convinced that DTMB withheld any discovery. Instead, it seems more logical that 21 pages included *all* of the search results, with some compressed on single pages. Indeed, a review of the produced documents shows multiple emails and email strings contained on a single page. (ECF No. 54, PageID.509-530.) Likewise, Plaintiff's argument that the time stamps do no not add up is hardly the smoking gun he claims. While it would have been well for counsel to provide an explanation for the apparent inconsistency, the Court does not find the time stamps, on their own, to be any indication of fraud.

Indeed, the time stamps themselves are immaterial and unnecessary to any issue before the Court. What is relevant is that Plaintiff requested certain searches be performed, and the email indicates the required searches were performed. DTMD supports this by affidavit – which is of far greater evidentiary value to the Court than the email – averring that the searches were performed, and all responsive documents produced. Anything beyond that will be left for cross examination at trial.

### C. Order

Accordingly, Plaintiff's (1) Motion to Modify the Scheduling Order (ECF No. 91); (2) Motion for the Recruitment of Counsel (ECF No. 92); and, (3) Amended Motion for Sanctions for Noncompliance with Subpoena (ECF No. 101) are all **DENIED**.

IT IS SO ORDERED.[3]

Dated: May 15, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

---

[3] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).